## Fourth Court of Appeals
### San Antonio, Texas


## MEMORANDUM OPINION

No. 04-23-00634-CV

**IN THE INTEREST OF L.A.T.**, a Child

From the 225th Judicial District Court, Bexar County, Texas
Trial Court No. 2022PA01149
Honorable Kimberly Burley, Judge Presiding

Opinion by:     Liza A. Rodriguez, Justice

Sitting:         Patricia O. Alvarez, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: November 29, 2023

AFFIRMED

J.H. appeals from a judgment terminating his parental rights to his child, L.A.T.[1] In one issue, he argues the evidence is legally and factually insufficient to support the trial court's finding that termination of his parental rights is in the child's best interest. We affirm.

### BACKGROUND

On July 19, 2022, the Texas Department of Family and Protective Services filed an original petition seeking protection of L.A.T., conservatorship, and termination of parental rights. On August 2, 2022, the Department amended its petition to include J.H. as the child's alleged father. On August 11, 2022, J.H. was served with the amended petition, which asked the trial court to

---

[1] We use the initials of the appellant and the child to protect the child's identity. *See* TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

terminate his parental rights. On November 28, 2022, the trial court held an adversary hearing and ordered J.H. to comply with each requirement set out in a family service plan prepared by the Department. Thereafter, genetic testing was performed, and it confirmed J.H.'s paternity. On June 8, 2023, the trial court signed an order establishing the parent-child relationship between J.H. and L.A.T.

On June 21, 2023, the trial court held a bench trial. The evidence showed that J.H. had been incarcerated since the suit was filed and had not completed the services in his service plan. It further showed that L.A.T. was living in a foster home, where her physical and emotional needs were being met. The trial court terminated J.H.'s parental rights on two predicate grounds: (1) failure to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child, and (2) knowingly engaging in conduct that resulted in his conviction of an offense and imprisonment and inability to care for the child for not less than two years from the date of the filing of the petition. *See* TEX. FAM. CODE § 161.001(b)(1)(O),(Q). The trial court also found that termination of J.H.'s parental rights was in the child's best interest. *See id*. § 161.001(b)(2). J.H. appealed.

### STANDARD OF REVIEW

To successfully terminate parental rights under section 161.001 of the Texas Family Code, the Department must prove by clear and convincing evidence that: (1) a parent engaged in at least one of the predicate grounds listed in subsection 161.001(b)(1), and (2) the termination of parental rights is in the child's best interest. *See* TEX. FAM. CODE § 161.001(b)(1),(2). When reviewing the legal sufficiency of the evidence, we look "at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). When reviewing the factual sufficiency of the evidence,

we consider disputed or conflicting evidence. *Id.* at 345. "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id.* (quoting *In re J.F.C.*, 96 S.W.3d at 266).

In a bench trial, the trial court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *In re D.L.R.*, No. 04-22-00811-CV, 2023 WL 3856732, at *2 (Tex. App.—San Antonio June 7, 2023, pet. denied). Because the trial court is best able to observe and assess the witnesses' demeanor and credibility and to sense the forces and influences that may not be apparent from merely reading the record on appeal, we defer to the trial court's credibility determinations. *Id.*

## DISCUSSION

On appeal, J.H.'s sole complaint is that the evidence is legally and factually insufficient to support the trial court's best interest finding. Under Texas law, there is a strong presumption that maintaining the parent-child relationship is in the child's best interest. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, there is also a presumption that a child's best interest is served by her prompt and permanent placement in a safe environment. TEX. FAM. CODE § 263.307(a). In determining if a parent is willing and able to provide a child with a safe environment, we consider the factors listed in section 263.307(b) of the Texas Family Code.[2] *Id.* § 263.307(b). We also

---

[2]The factors pertinent in this case are: (1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of harm to the child; (4) the willingness and ability of the family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (5) the willingness and ability of the family to effect positive environmental and personal changes within a reasonable period of time; (6) whether the parents demonstrate adequate parenting skills, including providing the child with, among other things: (a) minimally adequate health and nutritional care; (b) care, nurturance, and appropriate discipline consistent with the child's physical and psychological development; (c) guidance and supervision consistent with the child's safety; and (d) a safe physical home environment; and (7) whether an adequate social support system consisting of extended family and friends is available to the child. TEX. FAM. CODE § 263.307(b).

consider the non-exhaustive list of factors set forth by the Texas Supreme Court in *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).[3] "[P]roof of acts or omissions under section 161.001(1) does not relieve the [Department] from proving the best interest of the child, but the same evidence may be probative of both issues." *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002). "A best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied).

### *The Trial Evidence*

Here, a caseworker for the Department, Jerry Lopez, testified about the agency's involvement in this case. L.A.T. was born prematurely at thirty-one weeks. It appeared that L.A.T.'s mother had not had any prenatal care. At birth, L.A.T. tested positive for amphetamines. The Department filed its termination suit, and the trial court signed an emergency order authorizing L.A.T.'s removal from her mother. Shortly thereafter, L.A.T.'s mother told the Department that J.H. was L.A.T.'s father, and the Department amended its petition to add J.H. as L.A.T.'s alleged father.

Lopez also testified that on December 1, 2022—after the trial court had appointed counsel to represent J.H., had held an adversary hearing, and had ordered J.H. to comply with a family service plan—he met with J.H. in person at the Comal County jail, where J.H. was incarcerated. J.H. told Lopez that he was in a relationship with L.A.T.'s mother, and he "knew" that he was L.A.T.'s father. In fact, J.H. was emphatic about being L.A.T.'s father. J.H. said he wanted to work

---

[3]These factors are: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) the present and future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or the proposed placement; (8) the parent's acts or omissions indicating that the existing parent-child relationship is not a proper one; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

services so that he could be in L.A.T.'s life when he was released from prison. When first asked if he had any family members that might be able to care for L.A.T., J.H. said he could not think of anyone who would be appropriate. At a later time, J.H. provided the Department with his mother's name and number but the Department was unable to contact her. J.H. signed the service plan, which was admitted into evidence at trial, and understood what was required of him. According to Lopez, some of the services J.H. needed—substance abuse treatment and individual counseling— were available at the Comal County jail. Although J.H. was in the Comal County jail for a short time and was scheduled to be transferred to a prison facility, Lopez believed that the same services were also available at the prison. J.H. would have to place his name on a waiting list, following other inmates who were already there.

Lopez further testified that by the time of trial, J.H. had not completed any of the services in his service plan. Lopez did not know if J.H. was on the waiting list for any of the services in his service plan. Lopez felt that J.H.'s parental rights should be terminated because J.H. had not been present for L.A.T.'s entire life and had not provided any type of financial or emotional support for the child.

As to L.A.T., Lopez testified that the child was a year old at the time of trial. Because of her prenatal exposure to amphetamines, L.A.T. was receiving early childhood intervention services. Her medical condition was currently controlled, but L.A.T. was going to have long-term health issues caused by her drug exposure. L.A.T. was in a safe and stable home. She had lived with the same foster parents for her entire life. Not only was L.A.T. "very aware of her surroundings," she was also "very, very bonded" with her foster parents and their extended family. L.A.T.'s foster parents were meeting all of the child's needs, including her medical needs, and providing her with a loving home. Lopez felt that removing L.A.T. from her foster parents at this

time would be detrimental to her. The Department's long-term plan for L.A.T. was adoption by the child's foster parents, who wanted to adopt her.

J.H. testified on his own behalf. J.H. said he had been in prison for "close to a year." He was serving sentences for "bail-jumping" and fraudulent use or possession of identifying information.[4] The "bail jumping" conviction stemmed from an evading arrest charge, which had been dismissed. J.H. said that he had been on probation, but it was revoked. According to J.H., his early prison release date was in 2025, and his maximum prison release date was in 2029. J.H. added that he was scheduled for a parole hearing in October 2023, but also acknowledged that his previous request for parole was denied.

J.H. also testified that he needed more time to engage in the services in his service plan because he had just learned that he was L.A.T.'s father. J.H. emphasized that he had recently received the test results confirming that he was L.A.T.'s father. At the same time, J.H. testified that he had already completed as many of the services as the prison would allow him to do. Specifically, he claimed that he had completed "Self-care," "Sex Education," and all the courses in the "Bible College." He also said that he was "in the middle of Starting Point." But J.H. did not explain how any of these services corresponded to the services required by his service plan. J.H. also admitted that he had not provided either his lawyer or the caseworker with certificates showing his completion of any of these services. Furthermore, J.H. claimed that he was "on a waiting list to continue bettering myself."

Finally, J.H. testified that he wanted the Department to pursue placements for L.A.T. with some of his relatives. He again identified his mother as a potential relative placement. He also

---

[4]The judgment of conviction, which was admitted into evidence, shows that the latter offense was a second degree felony. *See* TEX. PENAL CODE § 32.51.

identified a cousin as a potential relative placement. J.H. did not testify about any plans he had to establish a safe and stable home for L.A.T. after his release from prison.

*Application*

On appeal, J.H. argues that the evidence is legally and factually insufficient to support its finding that terminating his parental rights is in L.A.T.'s best interest. In making this argument, J.H. points out that he has been incarcerated for the entire duration of the suit and that he was not able to provide a home for L.A.T. because of his incarceration. J.H. also points out that he had nothing do with the circumstances that led to L.A.T.'s removal from her mother.

J.H.'s incarceration is undoubtedly an important consideration in this case. "A parent's incarceration is an appropriate factor the court may consider in evaluating the best interest of the child." *In re J.J.M.*, 04-22-00504-CV, 2022 WL 17660987, at *3 (Tex. App.—San Antonio Dec. 14, 2022, no pet.) (internal quotation marks omitted). "A parent's lengthy absence from a child's life during her early years due to incarceration creates an emotional vacuum that threatens the child's emotional well-being and indicates that the parent-child relationship is not a proper one." *In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied) (internal quotation marks and brackets omitted).

Here, the evidence showed that J.H. was serving prison sentences for two offenses. J.H.'s early release date was in 2025, and his maximum release date was in 2029. The trial court was allowed to consider the possibility that J.H. might serve his entire sentence and not be released until 2029. *See In re E.A.M.V.*, No. 04-18-00866-CV, 2019 WL 1923214, at *4 (Tex. App.—San Antonio May 1, 2019, pet. denied) (concluding that trial court could have properly determined that termination of parental rights was in the child's best interest when, among other things, the parent had been incarcerated for the entirety of the case and his prison release date was uncertain); *In re J.M.G.*, 608 S.W.3d at 56 ("[A] parent's testimony about parole eligibility, even if undisputed, is

generally not binding on a factfinder because parole decisions are inherently speculative and rest entirely within the parole board's discretion."). As even J.H. admitted in his testimony, his prison release date was uncertain. Thus, the trial court could have properly determined that J.H.'s incarceration would be long-term, and that he would be incarcerated and unable to care for L.A.T. for another six years. This determination supported the trial court's finding that termination of J.H.'s parental rights was in L.A.T.'s best interest. "[A] parent's inability to maintain a lifestyle free from arrests and incarcerations [is] relevant to the best-interest determination." *In re K.L.P.*, No. 04-17-00253-CV, 2017 WL 4014613, at *5 (Tex. App.—San Antonio Sept. 13, 2017, no pet.). "Such conduct subjects a child to a life of uncertainty and instability, ultimately endangering the child's physical and emotional well-being." *Id.*

Next, we agree with J.H. that the evidence does not show that he was involved in the circumstances that led to L.A.T.'s removal. However, the evidence does show that when the Department learned that J.H. was the alleged father, J.H. was already incarcerated and in no position to care for L.A.T. This evidence further supports the trial court's best interest finding. Based on his criminal convictions and related incarceration, the trial court could have determined that J.H. "through his own course of conduct, had put himself in a position in which he was unable to meet [L.A.T.'s] present and future physical and emotional needs." *See In re E.A.M.V.*, 2019 WL 1923214, at *4.

J.H.'s failure to complete the specific services in his service plan is another important consideration. "[A] parent's actions or inactions with regard to the [court-ordered] service plan is relevant to a child's best interest." *In re D.J.R.*, No. 04-22-00579-CV, 2023 WL 3214552, at *4 (Tex. App.—San Antonio May 3, 2023, pet. denied). Here, the Department caseworker, Lopez, testified that about six and a half months before trial, he met with J.H. and explained the services in his service plan to him. According to Lopez, J.H. understood what the service plan required of

him. Lopez testified that some of the required services—substance abuse treatment and counseling—were available at the prison facility where J.H. was incarcerated. But, according to Lopez, J.H. did not complete any of the services in the service plan. Although J.H. testified that he completed some services while in prison, he acknowledged that he did not provide either his lawyer or the caseworker with certificates of completion. As the fact finder, the trial court could have disbelieved J.H.'s testimony regarding his completion of services. Additionally, J.H.'s testimony did not explain how the services he claimed to have completed satisfied the specific services set out in his service plan. Based on the evidence presented, the trial court could have determined that J.H. had failed to complete the services in his service plan.

L.A.T.'s young age, the stability of her current foster placement, and the parties' future plans for L.A.T. are other important considerations. "When children are too young to express their desires, the fact finder may consider that the children have bonded with the foster family, are well-cared for by them, and have spent minimal time with a parent." *In Interest of S.J.R.-Z.*, 537 S.W.3d 677, 693 (Tex. App.—San Antonio 2017, pet. denied) (quoting *In re J.D.*, 436 S.W.3d 105, 118 (Tex. App.—Houston [14th Dist.] 2014, no pet.)). Here, L.A.T. was a year old at the time of trial and far too young to express her desires. However, the evidence showed that L.A.T. had bonded with her foster parents, who were meeting all her needs and providing her with a loving home. The Department's long-term plan for L.A.T. was adoption by her current foster parents. By contrast, J.H. did not know L.A.T. and had never provided her with any type of financial or emotional support. Furthermore, J.H. presented no evidence that he had any plans to provide a safe and stable home for L.A.T. after his release from prison. "That [L.A.T.] is thriving in the current placement with her [foster family] in a stable and nurturing environment with a planned adoption further supports the trial court's finding that termination is in [L.A.T.'s] best interest." *In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied).

Viewing all the evidence in the light most favorable to the challenged finding, we conclude that a reasonable trier of fact could have formed a firm belief or conviction that termination of J.H.'s parental rights was in L.A.T.'s best interest. *See In re J.O.A.*, 283 S.W.3d at 344. We further conclude that the disputed evidence was not such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *See id.* at 345. We hold the evidence is legally and factually sufficient to support the trial court's best-interest finding.

## CONCLUSION

We affirm the judgment terminating J.H.'s parental rights.

Liza A. Rodriguez, Justice